SAM HARNDEN, et al., Respondents, v. SOUTHERN SURETY COMPANY, Appellant.

Springfield Court of Appeals, April 20, 1918.

1. **CONTRACTS: Public Policy: Validity.** A contract by a mining company lessee, to indemnify lessor of machinery for damages by reason of injuries to employees, although caused by the negligence of the lessor, is valid.

2. **INSURANCE: Indemnity Insurance: Liability on Policy.** Where a mining company carrying liability insurance had contracted to hold the lessor of machinery free from loss from injuries to employees, and the attorney for the insurance company and the lessor settled actions against the mining company and the lessor, each paying half, the insurer was liable to the mining company for money which it was compelled to pay to the lessor under its contract.

3. ————: ————: **Test of Liability.** An indemnity insurance company, whose policy provides that it shall have the right to defend against all claims for damages and be liable only in case of judgment in a court of last resort, actually paid by the insured, cannot be held liable for any settlement of a claim or judgment not yet final unless it was accorded the right to contest such claim or judgment to such a final judgment.

4. ———: ———: **Settlement of Claim: Waiver.** Evidence *held* to sustain a finding that insurer against employer's liability for injuries to employees consented to a settlement, and waived its right to continue the defense to a judgment in the court of last resort.

Appeal from Jasper Circuit Court.—*Hon. T. D. Perkins,* Judge.

AFFIRMED.

*R. M. Sheppard* for appellant..

*George Farris* and *A. G. Young* for respondents.

STURGIS, P. J.—The plaintiffs as beneficiaries in an Employers Liability Insurance Policy issued by defendant recovered judgment in the trial court on account of an alleged loss suffered by them and covered by such policy. The plaintiffs were engaged in mining, having a large number of employees engaged in that work, and by the policy in question defendant agreed to indemnify the plaintiff against all law costs, loss and damages by reason of the legal liability of the assured (plaintiffs) for and on account of bodily injuries or death suffered through an accident by any employee of the assured while working for plaintiffs in their mine. It is conceded that an accident happened during the life of the policy by which two employees of plaintiffs lost their lives. The mine and machinery being used and operated by plaintiffs were owned by the American Lead and Zinc Company (called herein the American company) under a contract or lease from that company. The wives of the two deceased employees brought separate suits for damages for the loss of their respective husbands against the plaintiffs and the American company jointly, alleging joint negligence and joint liability. The plaintiff, as required by the indemnity policy in question, notified the defendant company and, as was its duty, the defendant undertook the defense of the two damage suits on behalf of

the plaintiffs. The American company participated in the defense but there is no complaint that defendant was not given a free hand in conducting the defense unless it be in the matter of a final settlement to be noticed later. One of the damage suits, called the Koonts case from the name of the plaintiff therein, went to trial in the circuit court resulting in a judgment against these plaintiffs and the American company in the sum of $5250. All the steps necessary for an appeal of this case were then taken. The amount sued for in each of the damage suits was $10,000. The limit of defendant's liability was $5000 in each case other than the costs. At this stage of the damage suits, negotiations were had resulting in a settlement of both cases for $3000, one-half or $1500 being paid to each widow. The present controversy grows out of such settlement.

As the settlement of the damage suits was actually made the defendant company paid one-half thereof, or $750 in each case, and took a full release from each widow (plaintiffs in the damage cases) on behalf of these plaintiffs. The American company ostensibly paid the other half. The gist of the present case arises from the fact that under the contract by which the plaintiffs were operating the mine and machinery of the American company, they had agreed to assume all the liability for accidents to workmen and agreed to indemnify and hold harmless the American company in case of injury or death of all employees. By virtue of this contract the American company compelled the plaintiffs to reimburse and pay to it the amount $1500 so paid by it in the settlement of the two damage cases. In the present suit the plaintiffs seek to recover from defendant the loss so sustained by them.

It is settled we think in the case of Kansas City, etc., Railroad v. Southern News Co., 151 Mo. 373, 52 S. W. 205, that the contract is a valid one by which these plaintiffs agreed to indemnify and save harmless the American Company from any loss which it might

sustain by reason of injury to any of plaintiff's employees while working in or about the American company's mine even though such injury was occasioned in whole or in part by the negligence of the American company. These plaintiffs had so agreed as part of the consideration for which they were allowed to carry on the business of mining on the American company's premises and with the use of the American company's equipment and appliances. The facts were similar in the Southern News Company case, in which it was held liable to the railroad company for the loss due to the injury of one of its employees though such injury was due to the negligence of the railroad company whose railroad and equipment the News company was using at the time of the injury. It is not material, therefore, in the present case whether these plaintiffs voluntarily or involuntarily allowed the American company to use the funds of the plaintiffs then in the American company's hands in settling these damage suits, provided it be conceded that there was liability against either of these plaintiffs or the American company in the damage cases and that the amount paid was reasonable. So far as these plaintiffs are concerned they stand in as favorable a position as if they had resisted the claim of the American company and paid same only on final judgment as did the Southern News Company in the case mentioned.

That defendant's liability to plaintiffs on the indemnity policy in question is not defeated by the fact that part of the loss paid in settlement of the two damage suits was paid directly by the American company which in turn collected same from plaintiffs, is held by Fidelity and Casualty Co. v. Southern News Co. (Ky.), 101 S. W. 900 and 83 S. W. 620. The policy in question agrees to indemnify plaintiffs for all loss or damage by reason of the legal liability of the assured on account of injury or death suffered by any employee. The entire loss fell on plaintiffs and defendant is obligated to indemnify plaintiffs for the loss paid by plaintiffs to discharge same whether paid

directly by these plaintiffs to the plaintiffs in the damage suits or indirectly to and through its co-defendant the American company. The loss to plaintiffs was just as real and acute as if they had paid same directly to plaintiffs in the damage suits.

The three cases above mentioned grew out of one transaction and the facts are quite similar to the present case. The Southern News Company was carrying on its business of selling newspapers, candy, etc., on and by use of the trains and equipment of the Kansas City, etc., Railroad under a contract to indemnify and hold harmless the railroad from loss on account of injury to the News Company's employees. One of such employees was injured by the negligence of the railroad and sued and recovered judgment against such railroad. The railroad company in turn compelled the News Company by suit to reimburse it (Kansas City, etc., Railroad v. Southern News Company, supra). The News Company held an employer's liability policy similar to the one now in suit. Such insurer was notified of and given the opportunity to defend both the damage suit against the railroad and the suit of the railroad against the News Company on the collateral contract for reimbursement. The News Company, the assured in such policy, then sued the insurance company for the loss it had suffered indirectly by having to reimburse the railroad company for its loss to the damage suit plaintiff. The Court of Appeals of Kentucky held the insurance company liable, the purport of its decision being that the insurer in the employer's liability policy is liable to the insured who has suffered a loss by reason of havng to reimburse a third party under a contract so to do when the third party has suffered a loss by reason of negligent injury to the insured's employee. This holding meets with our approval.

We agree, however, that in such a case the insurer has a right to insist on and must be accorded both by the insured and such third party all the rights and restrictions given the insured by the policy, inclusive

of the right to defend to the utmost the damage suit by the injured employee whether against the insured or such third party or both; that the insured's liability cannot arise against its will except by a final judgment in the damage case. In the present case the defendant was notified and undertook the defense of the two damage suits in question. The participation of the American company in the defense was within its rights and in harmony with this defendant. One of the damage suits was tried resulting in a judgment against both plaintiffs and the American company in an amount greater than the defendant's liability under the policy and the other damage suit based on the same facts and involving a still larger amount was yet pending. In neither case, however, was the defendant's liability in any amount finally fixed, since the right of appeal in one case and of trial and appeal in the other was yet open to it. Can defendant be said to have consented to the settlement of these damage cases in a manner throwing the entire loss on plaintiffs and to have waived its right to continue the defense to a judgment in the court of last resort. We think so.

In determining this we are only concerned with the question of there being any substantial evidence so showing since no declarations of law were asked or or given other than a demurrer to the evidence. The defendant's evidence is to the effect that when the two damage suits reached the condition just mentioned the American company declared its intention to settle the same regardless of what plaintiffs did so far as its liability was concerned on the terms offered by the plaintiffs therein, to-wit, $1500 in each case. That company has a right to do this under the statute, Laws 1915, p. 268. We may concede without deciding that had the American company done this against the defendant's wishes and protest the defendant as insurer would not be liable under the conditions of the policy for any amount so paid by the American company, even though it used plaintiffs' money then in its hands in so doing. The evidence however is not conclusive in defendant's

favor that such was the attitude and intention of the American company. The settlement of the two damage cases was actually made on the basis of this defendant paying one-half such sum on plaintiffs' behalf and the American company paying the other half. There is evidence that this defendant's attorney, representing these plaintiffs in the damage suits and charged with the common-law duty of protecting his clients' interests and charged by the insurance contract to see to it that these plaintiffs whom he represented paid nothing whatever in settlement of the damage suits, knew that the American company intended to and would hold these plaintiffs for whatever amount that company was ostensibly paying in settlement of such suits. These plaintiffs had no voice in the making of such settlement except through the attorney hired by this defendant who had taken over and out of these plaintiffs' hands the defense of the damage suits. His position was a difficult and delicate one as is usual when a person undertakes to serve two masters with somewhat conflicting interests. The defendant insurance company had contracted and undertaken for a valuable consideration not only to defend the damage suits but to indemnify and save these plaintiffs harmless from the results of such litigation and the attorney hired by the defendant to do that became plaintiff's attorney and was bound to act for plaintiffs' interest regardless of the interests of this defendant. In making the settlement of these damage suits he did not consult his clients, these plaintiffs, although it is apparent they would never have consented to a settlement by which they were ultimately and indirectly made to pay half the damages. Such settlement and loss was forced on them unless they can recover in this case. It will not do to say, as defendant does, that it did no more than passively consent to the American company paying half the damages and that it in no way advised, urged or procured such company to do so. Under this relation and obligation to plaintiffs defendant owed them a higher duty than that, to-wit, the duty of protection from loss.

All the facts here requires us to hold is that the defendant cannot be allowed to escape liability when the facts warrant a finding that is voluntarily joined with the American company, the co-defendant of these plaintiffs in the damage cases, in making a settlement of same wherein and whereby, as defendant knew, the plaintiff would without their knowledge or consent be compelled to pay and lose the amount ostensibly being paid by the American company but which ultimately fell on them. We so hold and the result is that the judgment is affirmed. *Farrington* and *Bradley, JJ.*, concur.