ST. LOUIS POLICE RELIEF ASSOCIATION, A CORPORATION, RESPONDENT, v. AETNA LIFE INSURANCE COMPANY, A CORPORATION, APPELLANT. —154 S. W. (2d) 782.

St. Louis Court of Appeals.   Opinion filed October 7, 1941.

Motion for rehearing overruled October 24, 1941.

414

*Jacob M. Lashly* and *Lashly, Lashly, Miller & Clifford* for plaintiff-respondent.

*Wm. H. Allen* for appellant.

ANDERSON, J.—This is an appeal from a judgment for plaintiff, St. Louis Police Relief Association, in an action on a policy of liability insurance issued by appellant, Aetna Life Insurance Company, to plaintiff-respondent. A jury was waived, and the cause was tried before the court. The record discloses the following facts:

On December 10, 1924, respondent entered into a written lease with the St. Louis Coliseum Company, a corporation, under which respondent, as lessee, was granted the right to use the Coliseum building, in the City of St. Louis, for the purpose of holding therein a police benefit circus, for a term of 17 days, beginning April 11, 1925, and

ending April 27, 1925. The seventh paragraph of the lease provided as follows:

"The said lessee shall indemnify and hold harmless the lessor from liability for personal injuries to any employes of said lessees, or to any other persons, from any cause whatsoever while said premises are occupied under this lease."

Prior to the holding of the police benefit circus, the St. Louis Coliseum Company sold the Coliseum building to the New Coliseum Company, a corporation; and, as lessor, assigned said lease and all of its rights thereunder to the New Coliseum Company.

Thereafter respondent took possession of the Coliseum building and, during the term of said lease, conducted therein its benefit circus. On April 13, 1925, and after respondent had taken possession of the building, appellant issued to respondent the policy of liability insurance here sued upon, by which policy appellant agreed to indemnify respondent, to the extent of $10,000, from April 13, 1925, to April 26, 1925, "against loss and/or expense arising or resulting from claims against the assured for damages on account of bodily injuries and/or death accidentally suffered or alleged to have been suffered by any person or persons, . . . (a) while within or upon the premises . . .; and (1) by reason of the ownership, maintenance or use of the premises . . ., (2) by reason of the business as described and conducted by the Assured at the locations named therein . . . save and except claims arising by reason of . . . 5. Liability of others assumed by the Assured under any contract or agreement, oral or written."

On April 24, 1925, Mary Cordes, while attending the benefit circus, fell down a stairway in said building and sustained personal injuries. Thereafter she filed suit in the Circuit Court of the City of St. Louis against the St. Louis Coliseum Company, the New Coliseum Company, and respondent, to recover damages for and on account of said injuries, alleging in her amended petition in said suit that her injuries were caused by the negligence of all of the defendants in permitting soda water bottle caps to be scattered and to lie upon the steps of said stairway, and by the negligence of said St. Louis Coliseum Company and said New Coliseum Company in causing and permitting said stairway to be and remain without handrails, in violation of an ordinance of the City of St. Louis, which ordinance is pleaded in said amended petition.

The appellant, Aetna Life Insurance Company, pursuant to the terms of the policy sued upon, defended the suit on behalf of respondent, St. Louis Police Relief Association, and effected a settlement for $3000 of the claim against the St. Louis Police Relief Association. Thereafter, on or about April 9, 1929, said suit was dismissed as to the St. Louis Police Relief Association.

At the time of the accident to Mary Cordes there was also in full force and effect a liability policy issued by the General Accident, Fire and Life Assurance Corporation, Limited, a corporation, in which policy said company agreed to indemnify the defendant New Coliseum Company against loss by reason of liability imposed by law upon New Coliseum Company on account of bodily injuries which might occur by reason of the ownership, care, maintenance, occupation, or use of said building and premises. Pursuant to the terms of this policy the General Accident, Fire and Life Assurance Corporation, Limited, defended the Mary Cordes' suit on behalf of the New Coliseum Company. A settlement agreement was reached between the attorneys for Mary Cordes and the attorney for the General Accident, Fire & Life Assurance Corporation, Limited, providing that in compromise of said suit, a judgment in the sum of $2500 and costs might be entered therein in behalf of plaintiff, Mary Cordes, and against the New Coliseum Company, the suit to be dismissed as to the defendant, St. Louis Coliseum Company. On April 12, 1929, the court, after hearing testimony adduced by Mary Cordes, entered judgment in accordance with the terms of said agreement, which judgment was thereafter paid by the General Accident, Fire & Life Assurance Corporation, Limited.

The evidence offered at the above mentioned hearing consisted of the testimony of Mary Cordes. A transcript of said testimony was offered in evidence by plaintiff, over the objections of defendant, at the trial below, and said testimony was substantially as follows:

"My name is Mary Cordes. I am 43 years of age, married and live at 2646 Accomac Street. My husband's name is Fred Cordes. I was injured on April 24, 1925, in an accident at the Coliseum. I was coming down the steps with my little boy, six years, and as I hit the second step I stepped on a soda bottle cap and it stuck in my rubber heel and I fell down the steps. I was hurt, my injuries consisting of two broken ribs, fractured knee cap, and my eyelid was all taken partly off, scraped on the steps. My limb was all bruised all the way up. I understand this settlement here as to this defendant is for $2500, and I understand that is all I am to get as to this defendant."

On March 10, 1931, the General Accident, Fire & Life Assurance Corporation, Limited, insurance carrier and subrogee of the New Coliseum Company, instituted suit against respondent in the United States District Court for the Eastern Division of the Eastern Judicial District of Missouri, upon the indemnifying clause of the lease dated December 10, 1924, to recover from respondent the amount it had been compelled to pay in satisfaction of said judgment in the Mary Cordes suit, plus the expenses incurred by it in connection therewith. The prayer of the petition was for judgment in the sum of 3041.10 and costs. The respondent called upon the appellant herein to defend said suit, but the latter refused to do so. Thereupon respondent defended said suit on its own behalf. The cause came on for trial

and resulted in judgment in favor of the General Accident, Fire & Life Assurance Corporation, Limited, plaintiff therein, in the sum of $3041.10, which judgment respondent paid. Thereupon respondent instituted this suit.

In the District Court case the petition alleged the issuance by plaintiff therein of the policy in favor of the St. Louis Coliseum Company, and pleaded its terms, including the subrogation clause which provided that in case of payment of any loss under said policy, said insurance company would be subrogated to the amount of such payment, to all of the assured's (New Coliseum Company's) rights of recovery for such loss or expense against any person or persons. It then alleged the leasing of the Coliseum building by respondent from the Coliseum Company, alleging the terms of said lease, including the clause whereby respondent agreed to indemnify and hold harmless the lessor, from liability for personal injuries to any employes of said lessee or to any other persons, from any cause whatsoever while said premises were occupied under said written agreement, and alleged that it, plaintiff therein, was subrogated to the rights of the New Coliseum Company under said agreement. Said petition then set out the facts with reference to the Mary Cordes' suit, and with reference to the demand made upon respondent to defend said suit and indemnify said New Coliseum Company and said St. Louis Coliseum Company in accordance with the terms of said written lease; the refusal of respondent to do so; the subsequent defense of said suit by plaintiff therein on behalf of the New Coliseum Company and St. Louis Coliseum Company; the rendition of judgment in said suit against the New Coliseum Company and in favor of Mary Cordes; and the payment of said judgment by General Accident, Fire & Life Assurance Corporation, Limited. The petition further alleged that it was the duty of respondent to defend said Mary Cordes suit and to indemnify the New Coliseum Company against loss which might arise therefrom, and to pay said judgment, but that respondent had failed in its duty in this respect; that after said General Accident, Fire & Life Assurance Corporation, Limited, had defended said suit of Mary Cordes and paid said judgment rendered therein, it, the General Accident, Fire & Life Assurance Corporation, Limited, became subrogated to the right of the New Coliseum Company to recover from respondent, defendant therein, the amounts so paid by it in payment of said judgment, attorney's fees and expenses, aggregating $3040.10, for which amount it prayed judgment.

To said petition filed in said District Court, respondent, defendant therein, filed an answer, consisting of a general denial, and a specific denial that the New Coliseum Company had or ever had had any rights or cause of action against it by reason of any of the facts alleged to be true in the amended petition in the Mary Cordes case, and a further specific denial that plaintiff therein was subrogated to

any rights which said New Coliseum Company had or might have had against it under any agreement. The answer further stated that the alleged agreement to indemnify and hold harmless relied upon by plaintiff therein was wholly void for the reason that defendant therein had no authority under its charter, constitution, and by-laws to enter into any such agreement.

To this answer plaintiff in said cause filed a reply, consisting of a general denial and a plea of estoppel to rely on the plea of *ultra vires.*

A trial of the issues before the court resulted in a finding and judgment in favor of plaintiff therein. The court made and filed findings of fact and conclusions of law. The facts found were substantially as we have hereinbefore set them out. In the conclusions of law, the court held, (1) that under the lease hereinbefore mentioned, respondent, defendant in said District Court case, was obligated to the New Coliseum Company to indemnify it and hold it harmless from liability for personal injuries sustained by persons on said premises while occupied by respondent under said lease; (2) that the General Accident, Fire & Life Assurance Corporation, Limited, was subrogated to all of the rights that accrued to said New Coliseum Company as against respondent under and by virtue of the seventh subdivision of said lease; (3) that said Accident, Fire & Life Assurance Corporation, Limited, as insurer of the New Coliseum Company, was not bound to permit the Mary Cordes suit to go to trial as against the New Coliseum Company and incur the risk of a verdict and judgment in excess of $2500, but was unlawfully entitled to compromise the liability of its assured, as it did; and (4) that respondent was liable to the General Accident, Fire & Life Assurance Corporation, Limited, in the amount of the judgment and costs in the Mary Cordes case, together with attorneys' fees and other expenses incurred by plaintiff in connection with the defense of said suit, aggregating $3041.10, for which sum judgment would be rendered in favor of said plaintiff. Thereafter judgment was rendered accordingly.

The pleadings in the instant case are quite lengthy. To review all their averments would unduly lengthen this opinion. Suffice it to say that the petition declared on the policy issued to respondent by appellant on April 13, 1925, and prayed judgment in the sum of $3000, the amount plaintiff paid to satisfy the federal court judgment against it and in favor of the General Accident, Fire & Life Assurance Corporation, Limited. The theory of the defense interposed in defendant's answer was that the claim sued for under the policy was not a claim arising by reason of any liability of this plaintiff to said Mary Cordes for bodily injuries sustained by her, but was a claim founded upon the liability of the New Coliseum Company to Mary Cordes, and hence was not covered by the policy, which expressly excluded from coverage claims arising by reason of liability of others assumed by the assured under any contract or agreement.

In reply plaintiff alleged that the judgment entered in said suit of Mary Cordes against said New Coliseum Company was founded upon the sole negligence of the St. Louis Police Relief Association, and that the sole, primary, and moving cause of the injuries alleged to have been sustained by the said Mary Cordes was the result of the negligence of the plaintiff, St. Louis Police Relief Association.

At the trial below plaintiff, over the objection of defendant, introduced in evidence portions of a deposition of Mary Cordes, taken in the suit of Mary Cordes v. St. Louis Coliseum Company et al., in which deposition she testified:

"Well, I was coming out of, got out of my seat with the two children, and I took the little fellow by the hand and I went to go down the steps, and as I went to go down the steps I stood on something, something funny I felt on the bottom of my foot, and as I went to take my step I fell down, and when I got to the bottom of the steps the people that was in front of me, there was a man and two women come back and they took hold of me and buttoned up my clothes, and they had their handkerchiefs, and they held the blood from my eye, and the man went out and got a chair and sat me down there, and they asked me what happened and I says, 'I don't know; I fell on something that is in my shoe.' And he got an Eversharp pencil out of his coat and picked this bottle cap off of my rubber heel. . . . The soda bottle cap was on the step when I stepped on it, I guess. The steps I was coming down were right opposite to where I sat to come down to go like towards the arena. I was coming down towards the arena. I was about two steps below the row where my seat was. . . . I did not see it before I stepped on it. There was a gentleman came up . . . and as I stepped aside there with my little boy by the hand I stepped on this thing, and before I had a chance to know anything I went all the way down to the bottom. . . . I don't know who put that bottle top on the steps; I guess these boys that were selling the soda there all evening. There were some vendors there selling soda; boys with these trays in front of them. . . . They opened the bottles for the customers. . . . They just opened them as they sold them and let them (the tops) drop anywhere. . . . There were some around where I was sitting. . . . The steps, I suppose, were otherwise in good condition, so far as I know. They were dry and not broken. . . .

"Q. The sole cause of your fall was stepping on this bottle top? A. I think so, sure."

Upon said pleadings and the proof adduced in support thereof, the trial judge found in favor of plaintiff, and in its finding of facts the court found that the original causation of plaintiff's loss was and is bodily injuries accidentally suffered by one Mary Cordes. The conclusions of law were:

"1.

"That under the applicable rules of construction, plaintiff-assured's loss is covered by the policy of insurance sued upon although enforced through the medium of a contractual duty to indemnify another against liability to a third person on account of personal injuries sustained by the third person where, as here, the original causation of plaintiff-assured's loss was and is 'bodily injuries accidentally suffered or alleged to have been suffered by any person,' or where (as here) the assured in reimbursing another under the contract of indemnity for another's outlay on account of the claim of a third person was making good for its (assured's) own primary wrong as between the assured and another.

"2.

"The Court concludes that plaintiff is entitled to a judgment against the defendant Aetna Life Insurance Company, a corporation, in the sum of three thousand dollars ($3,000.00) with interest thereon at the rate of six per cent (6%) per annum from the date of the institution of this suit, and for costs of this action."

Appellant in this court contends that the trial court erred in rendering any judgment herein in favor of respondent and against appellant, for under the pleadings, the agreed statement of facts, and the undisputed evidence adduced, appellant was and is entitled to a judgment in its favor. We are compelled to sustain this contention.

Policies of insurance are subject to the same rules of construction as other written contracts. The paramount rule of construction is that the intention of the parties, as expressed in the policy, must prevail, and since it is presumed that it was the intention of the parties to make a contract of insurance of the kind expressed by the plain language of the policy, a construction which would defeat that intention must be rejected. It is not the function of the court to construct for the parties a reasonable contract, which they have not made for themselves; effect must be given to the words used, if unambiguous, in their plain ordinary meaning, however unreasonable the result may be. [Wendorff v. Missouri State Life Insurance Company, 318 Mo. 363, 370, 1 S. W. (2d) 99, 57 A. L. R. 615; State ex rel. Mutual Life Insurance Company of New York v. Shain, 344 Mo. 276, 126 S. W. (2d) 181.] Applying the foregoing rule to the facts developed in this case, we must hold that the claim arose because respondent assumed the liability of another, and, therefore, is not within the coverage of the policy sued upon, but is a claim which, by the explicit terms of the policy, is expressly exempted from coverage.

Respondent relies upon the case of Swanson et al. v. Georgia Casualty Company, 315 Mo. 1007, 287 S. W. 455. We do not believe that case rules the case at bar. In that case the plaintiffs, who were building contractors, purchased a workmen's compensation or employee's liability policy from the defendant, Georgia Casualty Company.

By the insuring clause of that policy, the insurance company agreed to indemnify plaintiffs, within the policy limits, against loss arising from claims upon the assured, for damages on account of bodily injuries sustained by employees of the assured, by reason of the business conducted by the plaintiffs. Plaintiffs entered into a building contract with the Santa Fe Railroad, in which contract plaintiffs agreed to indemnify the railroad against any loss or damage suffered by it upon claims for personal injuries sustained by anyone by reason of the operations of the plaintiffs in the construction of the building. In the course of the construction of the building in question the railroad company furnished railroad equipment and a crew, whose wages were to be paid by plaintiffs. A member of this crew was injured through the negligence of the plaintiffs. Instead of filing suit against the plaintiffs, the injured party sued the railroad company in the State of Kansas, and recovered judgment. On appeal from that judgment, the Supreme Court of Kansas affirmed, holding that the members of the crew furnished by the railroad to Swanson Bros. were, in effect, employees of both the railroad company and Swanson Bros. The judgment was thereafter paid by the railroad company, who, in turn, demanded and received from plaintiffs repayment of the amount of the judgment, plus interest and costs. Plaintiffs then instituted the present suit to recover from their insurance carrier the amount paid by them to the railroad company. On appeal by plaintiffs from an involuntary nonsuit, the court held that plaintiffs could recover from their insurer, even though the injured person had sued only the railroad company, and the liability of plaintiffs over to the railroad company was enforced by means of its indemnity agreement with the railroad. The court held that the liability of the insurance company did not necessarily depend upon the manner in which the claim was enforced against the assured, whether directly or indirectly, "but upon the character of the original causation; that is, bodily injury suffered by an employee of the assured."

It will be observed, however, that the policy in that case did not contain a' clause, as does the policy sued on herein, excepting from coverage liability of others assumed by the assured under any contract or agreement, oral or written. That fact makes the decision inapplicable in the case at bar.

Respondent also relies on Harnden et al. v. Southern Surety Company, 200 Mo. App. 162, 204 S. W. 34. In that case the defendant Southern Surety Company issued its policy to plaintiffs, by the terms of which it agreed to indemnify plaintiffs against all law costs, loss, and damage by reason of the legal liability of the assureds for and on account of bodily injuries or death suffered through an accident by any employee of assureds while working for plaintiffs in their mine. Plaintiffs were engaged in mining under a lease contract with the American Lead and Zinc Company, who owned the property. In

this lease contract plaintiffs agreed to assume all of the liability for accidents to workmen and agreed to indemnify and hold harmless the American Company in case of injury or death to any employees.

Two of plaintiffs' workmen were killed while working in the mine during the term of this insurance policy. The wives of the deceased men brought two separate suits for damages against plaintiffs and the American Company alleging joint negligence and joint liability. Plaintiffs, as required by the indemnity policy, notified the defendant company, and the defendant undertook the defense of the two suits on behalf of plaintiffs. The American Company also participated in the defense.

These two cases were finally settled by the payment of $1500 to each widow, the defendant company paying one-half the amount of the settlement in each case, and the American Company paying the other half.

By virtue of the terms of the contract between the American Company and plaintiffs, providing that plaintiffs would indemnify the American Company, the plaintiffs were compelled to reimburse and pay to the American Company the amount of $1500 so paid by that company in settlement of the two damage suits. Plaintiffs thereupon sought to recover from the defendant insurance company the amount paid to the American Company. Plaintiffs secured a verdict and judgment in their favor, which the Court of Appeals affirmed on the same theory as that declared in the Swanson case.

It will be noted, however, that in that case the policy sued upon contained no provision excepting claims arising by reason of "liability of others assumed by the Assured under any contract or agreement, oral or written." The case is clearly distinguishable on that score from the case at bar.

The next case relied upon by respondent is Board of Trade Livery Co. v. Georgia Casualty Co., 160 Minn. 490, 200 N. W. 633, 40 A. L. R. 678. In that case the plaintiff, Board of Trade Livery Company, operated a line of automobiles for hire in Duluth, Minnesota, and the Northern Navigation Company operated a line of passenger steamers between Duluth and other lake ports. Certain persons, referred to as the "Thurstons," held excursion tickets issued to them by the navigation company, which, among other things, entitled them to an automobile ride in Duluth. The automobile service in Duluth was rendered by the livery company, under an arrangement between it and the navigation company. While the Thurstons were being driven about Duluth in an automobile of the livery company, they sustained injuries by reason of the latter's negligence. The Thurstons resided in Michigan, and they there sued the navigation company for a breach of its contract of safe carriage, and recovered judgments against it, which judgments the navigation company paid. Later the navigation company, by suit against the livery company, recovered

the amount it had expended to satisfy said judgments, together with its expense incurred in defending the personal injury suits. Recovery was had on the ground that the livery company, through whose negligence the Thurstons had been injured, was primarily liable for the loss, and hence should be required to reimburse the navigation company. The livery company had a policy of liability insurance issued to it by the Georgia Casualty Company, whereby the latter agreed to indemnify the livery company, as assured, "against loss arising or resulting from claims upon the assured for damages on account of bodily injuries accidentally suffered or alleged to have been suffered" by reason of the ownership, maintenance or use of the automobile in which the Thurstons were being driven when injured. The policy excepted coverage of "liability of others assumed by the assured under any contract or agreement, oral or written." The livery company sued on this policy to recover the amount paid the navigation company. Judgment went for plaintiff, and the Supreme Court of Minnesota affirmed.

The court held that the loss sustained by the livery company, the assured, was one within the coverage of the policy; that it was a "loss arising or resulting from claims upon the assured for damages on account of bodily injuries accidentally suffered or alleged to have been suffered;" that the casualty company was liable to the assured, notwithstanding the fact that the claim for bodily injuries had not been enforced against the insured directly by the injured person, but by the navigation company that had been required to respond to the injured persons.

As to the excepting clause, the court said:

"The exception from defendant's contract responsibility of 'liability of others assumed by the assured under any contract or agreement' cannot be allowed to relieve defendant from its obligation to insure plaintiff against loss arising from its own liability for personal injuries suffered by its passengers. That is the kind of liability to which plaintiff has been compelled to respond. In reimbursing the navigation company for its outlay on account of the Thurston judgments, plaintiff was making good its own liability and its own wrong and not a primary liability or wrong of the navigation company, a conclusion the correctness of which is not altered by the circumstances that the Thurstons in the first instance were able to collect from the navigation company."

The policy in the above case contained provisions similar to those found in the case at bar, including a clause excepting from coverage liability of others assumed by contract, and at first blush it would appear that the case was an authority supporting respondent's contention. However, it will be observed that the livery company, in that case, was not compelled to pay the navigation company's loss by reason of a contract, but was forced to pay because it was primarily

liable for the damages suffered by the Thurstons. In the case at bar the respondent was not forced to respond to the General Accident, Fire & Life Assurance Corporation, Limited, on the theory that it was primarily liable to Mary Cordes for the injuries she sustained, but was compelled to reimburse said General Accident, Fire & Life Assurance Corporation, Limited, because respondent, by Paragraph Seventh of its lease, had assumed the liability of the New Coliseum Company. But for said Paragraph Seventh of said lease, respondent would have, under the foregoing authorities, a perfect cause of action on the policy sued upon.

The trial court in the instant case, in its conclusions of law, sought to bring the case squarely within the rule of the Minnesota case, by basing its decision upon a holding that the St. Louis Police Relief Association, in reimbursing the General Accident, Fire & Life Assurance Corporation, Limited, for its outlay in the settlement of the Mary Cordes suit, was making good its assured's own primary wrong. This holding is not supported by the evidence.

The character of the claim asserted by Mary Cordes must be determined from the pleadings in her suit. The negligence charged in the Mary Cordes suit was that all of the defendants negligently caused, suffered, and permitted caps from soda water bottles and other debris to remain upon the stairway of said building, rendering it dangerous and not reasonably safe; that defendants negligently failed to exercise ordinary care to inspect said stairway and steps; that defendants negligently failed to warn plaintiff of said danger and the likelihood of injury from same; that defendants negligently caused, suffered and permitted the dispensers of soda water and patrons to drop said bottle caps on said stairway and steps, and failed to adopt a reasonably safe method of caring for same so as to prevent their rendering said stairways dangerous.

As to the defendants, St. Louis Coliseum Company and New Coliseum Company, there was the further charge that they negligently "caused, suffered and permitted the aforesaid stairway to be and remain in its aforesaid condition without any handrails on both sides of said stairway, all in violation of an ordinance, Number 29560, Section 185, a duly enacted ordinance of the City of St. Louis (Wagner's Revised Code, 1914, Section 2386), which provides in substance that every theatre or opera house, or other building used for such purposes as herein mentioned, having seating accommodations for one hundred or more persons above the first or main floor thereof shall have strong handrailings on all stairways on both sides thereof, which railings shall be continuous across platforms and landings wherever possible, and plaintiff states that the aforesaid auditorium has a seating capacity of more than one hundred persons above its main or first floor." The petition then avers that Mary Cordes' injuries were caused by the aforesaid acts of negligence on the part of defendants.

It will be observed that with reference to the bottle caps, there was joint negligence charged as to all of the defendants, but no claim of liability on account of the alleged violation of the city ordinance with respect to handrails was charged against respondent herein, such charge being leveled only against the St. Louis Coliseum Company and the New Coliseum Company.

The claim then, which was settled by the New Coliseum Company, was a claim that its negligence, concurring with the negligence of the other defendants, caused the injury to Mary Cordes. When it paid the judgment in that suit, it sustained a loss resulting from liability established by the compromise judgment, which compromise the federal court found was justified.

The character of this liability, in the absence of any other evidence, takes its form from the nature of the claim asserted in the suit, which was beyond question an assertion of a claim of joint liability, and not one for which the New Coliseum Company was merely secondarily liable. The fact that Mary Cordes, in the transcript offered at the trial below, testified that she slipped on bottle caps does not establish that the liability of the New Coliseum Company, established by the judgment in her case, was one for which the respondent was primarily liable.

The liability of the New Coliseum Company, established by the judgment, was, in part, founded upon a chage in the petition in that case that it had violated a city ordinance with respect to handrails, which violation constituted an omission of duty which contributed to cause Mary Cordes' injury. There is no suggestion in the evidence that this omission of duty was a primary wrong of the respondent. It must, therefore, be regarded as the foundation of an independent liability of the New Coliseum and the "liability of another" within the meaning of the policy.

The Minnesota case held that whether the claim was "a liability of another" within the meaning of the policy depended upon whether the assured's loss, for which it sought reimbursement under the policy, resulted from its being compelled to make good its own liability and its own wrong. In that case the navigation company sued the livery company, and by the judgment in that case the navigation company established its contention that the injuries to the Thurstons were due to the primary negligence of the livery company. When the livery company paid the judgment, it was making good its own wrong. It suffered a loss due to its own primary negligence. But for that negligence the navigation company would not have been liable to the Thurstons for a breach of its contract of carriage. However, in the case at bar, can it be said that but for the negligence of the police relief association the New Coliseum Company could not have been held liable to Mary Cordes for the negligence charged against it in her petition? Clearly not. If the Mary Cordes suit had been

tried, it is possible that the jury might have found that respondent was not guilty of negligence with respect to the bottle caps, and at the same time might have found that the New Coliseum Company was negligent in failing to maintain handrails on the stairway in question. In such a case, if respondent thereafter was compelled under the terms of Paragraph Seventh of the lease to pay the said judgment, could it be said that it was not a "liability of another" assumed by contract? Now, instead of the case being tried, it was settled, and judgment was rendered for Mary Cordes against the New Coliseum Company alone, on a charge of joint negligence, one of which allegations of negligence was directed only against the New Coliseum Company. We must presume that the judgment in that case was responsive to the pleadings and established a liability under the assignments of negligence charged, and absent a showing that the duty, the violation of which was the foundation of the liability established by the judgment, was in reality a duty owed primarily by the respondent, it cannot be said that plaintiff in responding to the General Accident, Fire & Life Assurance Corporation, Limited, under Paragraph Seventh of the lease was making good its own liability and its own wrong.

The fact that Mary Cordes testified in the deposition offered in evidence, in answer to a leading question, that she thought the sole cause of her fall was the stepping on the bottle top does not alter the result. This testimony was a pure conclusion of law on her part, and not evidence of any fact, and does not show that the liability established by the judgment was founded upon a breach of duty for which respondent was primarily liable.

We must hold that plaintiff's evidence failed to make a case under the policy. The judgment is reversed. *Hughes, P. J.,* and *McCullen, J.,* concur.

### ON MOTION FOR REHEARING.

ANDERSON, J.—In its motion for rehearing respondent says that in holding that the trial court's findings and conclusions of law to the effect that assured, in reimbursing the New Coliseum Company under the contract of indemnity contained in the lease, was making good for its own primary tortious wrong, was not supported by the evidence nor the law applicable to the evidence, the court has failed to follow the following controlling decisions: Mahnken et ux. v. Gillespie et al., 329 Mo. 51, 43 S. W. (2d) 797; Meade v. Montrose, 173 Mo. App. 722, 160 S. W. 11; Ferguson v. Long, 341 Mo. 182, 107 S. W. (2d) 7; and Haverstick v. Brookshire (Mo. App.), 28 S. W. (2d) 432, wherein it has been held that as between the lessor and lessee, the latter is the primary wrongdoer where, as here, personal injuries are sustained by a third person arising from a condition of the premises over which the lessee has control. Some of the cases so hold. However, we have

not overlooked these cases, nor the principles they announce. But, they are not applicable to this case. Here the liability which we held that respondent assumed under contract was the liability for personal injuries alleged to have resulted from the lessor's failure to comply with the city ordinance with respect to handrails. The fact that the premises were under lease to respondent did not relieve the lessor from liability for damages for personal injuries resulting from its failure to observe the ordinance requirements. The lease did not shift the duties required by the ordinance to the lessee to make it the primary wrongdoer. [Yall v. Snow, 201 Mo. 511, 100 S. W. 1, 10 L. R. A. (N. S.) 177, 119 Am. St. Rep. 781, 9 Ann. Cas. 1161.]

The motion for rehearing is overruled. *Hughes, P. J.,* and *McCullen, J.,* concur.